IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN W. TRESVANT              :
                              :
                              :
     v.                       :   Civil Action No. DKC 12-0406
                              :
LYNN OLIVER, et al.           :
                              :

**MEMORANDUM OPINION**

Several motions are presently pending and ready for review in this employment discrimination case: (1) the motion to quash service of process and to dismiss filed by Defendant Lynn Oliver (ECF No. 4); (2) the motion to dismiss filed by Defendants Patricia D. Horoho and James K. Gilman (ECF No. 19); and (3) the motion to strike filed by Defendant Oliver (ECF No. 20). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because Plaintiff John W. Tresvant fails to establish standing, the complaint will be dismissed, and the motion to strike will be denied as moot.

**I.  Background**

    **A.  Factual Background**

The following facts are alleged in either the complaint (ECF No. 1) or the "supplemental to the complaint" (ECF No. 16) and are construed in the light most favorable to Mr. Tresvant,

the non-moving party.[1]  Plaintiff is employed by American Security Programs, Inc. ("ASP"), a federal government contractor.  In October 2004, Plaintiff began working as an armed security officer at Walter Reed Army Institute of Research/Navy Medical Research Center ("WRAIR/NMRC") in Silver Spring, Maryland, pursuant to a contract between ASP and the United States Army ("the Army").  Plaintiff also serves as the Vice President of the National Association of Special Police and Security Officers ("the Union") for the state of Maryland.  At all relevant times, Plaintiff was over the age of 40.

In 2008, the Army began requiring that all contract security guards undergo physical agility testing ("PAT") on an annual basis.  Pursuant to this new requirement, ASP and the Army agreed to amend the WRAIR/NRMC contract to mandate that all armed guards successfully complete PAT on an annual basis.  (*See*

---

[1] On June 20, 2012, Plaintiff submitted a filing that was docketed as a "supplemental to complaint."  (ECF No. 16).  Defendant Oliver moved to strike this document, arguing that Plaintiff did not seek leave to file a supplemental complaint and that, in any event, the document does not meet the requirements of a supplemental complaint set forth in Fed.R.Civ.P. 15(d).  (ECF No. 20).  As Oliver observes, Plaintiff's filing is largely duplicative of the original complaint and does not appear to "set[] out any transaction, occurrence, or event that happened after the date" of the original complaint.  *See* Fed.R.Civ.P. 15(d) (establishing the standard for supplemental pleadings).  Nonetheless, because Plaintiff's case must be dismissed for lack of standing even if the allegations of the putative supplemental complaint are considered, Oliver's motion to strike will be denied as moot.

ECF No. 1-8, at 3).  In the event that an armed guard does not pass PAT, the amended contract requires the employee to retest within 90 days.  If the armed guard fails PAT a second time, the amended contract mandates that "they shall not be retained on contract as an armed guard."  (*Id.*).

Pursuant to this modified contract, ASP began requiring all armed security officers working at WRAIR/NRMC to undergo annual PAT beginning in November 2008.  Prior to undergoing PAT, the armed security officers were required to sign a "Physical Fitness Readiness Test Medical Questionnaire," a form that asked ten questions about the employee's medical history.  ASP purportedly informed the armed security officers that, if they refused to complete and sign this form, they would be removed from the contract.  ASP did not require unarmed security officers working at WRAIR/NRMC to undergo PAT or to sign the medical questionnaire.

Although the complaint is not entirely clear, Plaintiff appears to contend that ASP's administration of PAT had a discriminatory effect on older security guards based on the following logic:  (1) older officers do not score as well as younger officers on PAT; (2) the percentage of armed security officers over the age of 40 is higher than the percentage of unarmed security officers over the age of 40; and, (3) because unarmed security officers were never required to undergo PAT or

3

to sign the medical questionnaire, ASP's policy regarding PAT had the effect of putting more older security guards at risk of having to take time off work or losing their jobs altogether.

Plaintiff cites to two examples of this purported discriminatory effect "[o]n the armed side." (ECF No. 1-6, at 1). First, Plaintiff contends that one armed security guard of an unspecified age lost his job because he did not pass PAT. Second, Plaintiff alleges that a second armed security guard, also of an unspecified age, lost time off work because he scored poorly on PAT and had to take it a second time. Plaintiff never alleges that he personally lost his job, was forced to take time off work, or otherwise suffered any change in the terms or conditions of his employment as a result of his PAT performance.

In March 2009, Plaintiff led a grievance on behalf of the Union challenging ASP's policy of requiring only armed security guards to undergo PAT. The grievance alleged that ASP's policy violates Army Regulation 190-56, which requires all "contract security guards" to undergo PAT and, according to Plaintiff, does not distinguish between armed and unarmed contract security guards. (*See, e.g.*, ECF No. 1-10, at 2-3). The grievance also alleged discrimination based on age. In response, ASP denied any wrongdoing and refused to change any of its practices in connection with PAT. (*See* ECF No. 1-9, at 5-7). Sometime shortly after Plaintiff and the Union initiated the grievance,

ASP terminated an older armed officer named Kumar Bandari because he was unable to complete PAT successfully. (ECF No. 1-2, at 6).[2]

Plaintiff also complains about a series of incidents involving Michael Dunbar, an unarmed security officer at WRAIR/NMRC whose age is not specified. Although the allegations regarding Mr. Dunbar are less than clear, Plaintiff appears to contend that, in his capacity as Vice President of the Union, he received a number of complaints about Mr. Dunbar from other ASP employees. Several of these complaints involved allegations that Mr. Dunbar handled a firearm at WRAIR/NMRC without the requisite training, permit, or background check. Plaintiff asserts that he complained about these incidents to ASP and the Army, who tried to cover up the alleged violations and, in doing so, "put the safety of others at risk." (ECF No. 16, at 5). Separately, Plaintiff received complaints that Mr. Dunbar had acted offensively toward other ASP employees. Plaintiff also apparently received a complaint from Malil Carter, another security officer, that ASP had moved Mr. Carter to a different position paying less money to accommodate Mr. Dunbar. Although Plaintiff reported these incidents, neither ASP nor the Army took any corrective action.

---

[2] It is not clear whether Mr. Bandari is the same officer Plaintiff discusses elsewhere in the complaint.

**B.    Procedural Background**

On July 27, 2010, Plaintiff filed a charge of discrimination with the Maryland Commission on Human Relations ("EEOC"), asserting claims against ASP for age discrimination and retaliation.  On November 9, 2011, the Baltimore Field Office of the EEOC issued a right to sue notice to Plaintiff. On February 9, 2012, Plaintiff filed a *pro se* complaint in this court on behalf of a putative class of armed contract security officers who worked at WRAIR/NMRC.  The complaint names as defendants Lynn Oliver of ASP; Major General James Gilman, of the U.S. Army Garrison in Fort Detrick, Maryland; and Lt. General Patricia Horoho of the U.S. Army Medical Command in Fort Sam Houston, Texas.  Plaintiff's complaint (as supplemented) purports to assert claims under the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").  When construed liberally, the complaint also appears to allege that Defendants violated a collection of other regulations, laws, and contracts – specifically, Army Regulation 190-56; various provisions of the Federal Acquisition Regulations; "Maryland State Law Weapons"; the contract between ASP and the Army; the collective bargaining agreement between ASP and the Union; and unspecified constitutional provisions.

On May 5, 2012, Defendant Oliver filed a motion to quash service or, alternatively, to dismiss. (ECF No. 4). Plaintiff filed an opposition to Oliver's motion (ECF No. 14), and Oliver replied (ECF No. 15). On June 5, 2012, Defendants Gilman and Horoho ("the Army Defendants") filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (ECF No. 8). The Army Defendants later filed a second motion to dismiss addressing the newly raised allegations in Plaintiff's "supplemental to the complaint." (ECF No. 19). Plaintiff filed an opposition to this second motion to dismiss (ECF No. 23), but the Army Defendants have not replied.

**II. Standing**

Any plaintiff seeking to invoke the jurisdiction of a federal court must establish standing. The doctrine of standing consists of two distinct "strands": constitutional standing pursuant to Article III and prudential standing. *See Elk Grove Unified Sch. Dist. V. Newdow*, 542 U.S. 1, 11 (2004). The requirements for constitutional standing reflect that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[.]"). To

establish Article III standing, a plaintiff must demonstrate that:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

In addition to satisfying constitutional standing requirements, a plaintiff must also demonstrate that his claims are not barred by prudential limitations on a federal court's exercise of jurisdiction. *See Doe v. Sebelius*, 676 F.Supp.2d 423, 428 (D.Md. 2009) (citing *Elk Grove Unified Sch. Distr.*, 542 U.S. at 12). In contrast to Article III standing, prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* at 11. One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves to "preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be

vindicated'" and to ensure that "'access to the federal courts [is] limited to those litigants best suited to assert the claims.'"  *Buchanan v. Consolidated Stores Corp.*, 125 F.Supp.2d 730, 738 (D.Md. 2001) (quoting *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 422 (4th Cir. 1984)).

This case raises prudential standing concerns because, at bottom, Plaintiff is seeking redress for harms suffered by other Union members.  For example, although Plaintiff asserts that ASP's administration of PAT had discriminatory effects on older security guards and that he is an older security guard, he does not allege that he personally suffered any injury as a result of having to undergo PAT.  Instead, he relies on the harms purportedly suffered by other armed security guards who failed to complete PAT successfully, one of whom was terminated and another of whom was forced to take time off.  Likewise with respect to his retaliation claim, Plaintiff does not assert that he suffered any direct harm as a result of initiating a grievance but instead alleges that ASP retaliated against the Union by firing another older employee, Mr. Bandari.  Finally, Plaintiff's myriad claims regarding Mr. Dunbar also rely on harms that other Union members suffered – including, for example, the loss in pay that Mr. Carter allegedly suffered when Defendants moved him to another position to accommodate Mr. Dunbar.

It simply is not enough for Plaintiff to stand in the shoes of his fellow Union members and to assert their legal rights. *See Elk Grove Unified Sch. Distr.*, 542 U.S. at 12 ("[P]rudential standing encompasses the general prohibition on a litigant's raising another person's legal rights[.]") (internal quotations marks omitted).  Indeed, in any litigation, including a purported class action, the named plaintiff must allege and prove standing in his own right to bring the suit. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (an individual who seeks to bring a class action must allege and show that he personally has been injured, "not that injury has been suffered by other, unidentified members of the class to which . . . [he] belong[s] and which [he] purport[s] to represent") (internal citation omitted).  Moreover, a *pro se* plaintiff like Mr. Tresvant cannot maintain a class action under any circumstances; the assistance of counsel is always required. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).

To the extent that the complaint could be construed as seeking to vindicate Plaintiff's own legal rights, he fails to satisfy Article III standing requirements because he does not allege any injury that is "concrete and particularized" or "actual or imminent."  For example, the mere possibility that Plaintiff might lose his job or be forced to take time off as a result of having to undergo PAT is insufficient to establish

10

constitutional standing. *See, e.g.*, *Chaplin v. Du Pont Advance Fiber Sys.*, 293 F.Supp.2d 622, 627 (E.D.Va. 2003) (where the plaintiffs posited only that "they *could* be reprimanded, and they *could* lose their jobs and career opportunities," their injury is merely "speculative") (emphases in original).[3]

---

[3] In his opposition to the Army Defendants' motion to dismiss, Plaintiff asserts that he suffered physical injury to his shoulder when he underwent his first round of PAT, which continues to cause him daily pain. (ECF No. 23, at 14). As a result of this injury, Plaintiff contends that he had to perform "Alternate Events" the next two times he underwent PAT. (*Id.*). These allegations are not properly considered, as it is well-established that a plaintiff cannot amend his complaint by asserting new facts in an opposition to a motion to dismiss. *See Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n. 4 (D.Md. 1997) (holding that facts contained in an opposition to a motion to dismiss but not within the complaint itself cannot be considered).

Even if the new allegations were considered, however, they would be insufficient to state a claim under the anti-discrimination provisions of either Title VII or the ADEA because Plaintiff does not contend that he suffered any change in the terms, conditions, or benefits of his employment as a result of his shoulder injury. In other words, Plaintiff does not allege that he suffered any adverse employment action. An adverse employment action is a necessary element of a discrimination claim under either the ADEA or Title VII, regardless of whether the plaintiff relies on a disparate treatment or disparate impact theory. *See, e.g.*, *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C.Cir. 2010) (under the ADEA, an adverse employment action is required under both disparate treatment and disparate impact theories of discrimination); *Young v. Covington & Burling LLP*, 740 F.Supp.2d 17, 21 (D.D.C. 2010) (summarizing case law indicating that, in the context of Title VII litigation under both disparate treatment and disparate impact theories, "the constitutional requirement of an injury in fact is construed as an adverse employment action") (internal citations and quotation marks omitted).

Likewise, any safety "risk" that Plaintiff faced due to Defendants' purported indifference to Mr. Dunbar's handling of a firearm is, at best, an indefinite and speculative harm that does not constitute an injury in fact for purposes of Article III standing.[4]

Because Plaintiff fails to satisfy either prudential or constitutional standing requirements, his complaint will be dismissed in its entirety.[5]

### III. Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendants Lynn Oliver, Patricia Horoho, and James Gilman will be granted. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[4] Even if Plaintiff had alleged that he personally suffered some cognizable harm as a result of Defendants' "covering up" Mr. Dunbar's conduct, many (if not all) of his claims relating to Mr. Dunbar's conduct would still be subject to dismissal because Plaintiff, as a private individual, cannot enforce the regulations, laws, or contracts he references in the complaint.

[5] In light of this conclusion, the arguments raised by Defendants in their respective motions – including those regarding improper service, failure to exhaust administrative remedies, improperly named parties, and general pleading inadequacies – need not be reached.